# IN THE COURT OF APPEALS OF IOWA

No. 23-0005
Filed May 8, 2024

**JOHN FELLER,**
       Petitioner-Appellant,

**vs.**

**STATE OF IOWA,**
       Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

A registrant challenges the denial of his application to modify sex offender registration requirements. **AFFIRMED.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., Schumacher, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BLANE, Senior Judge.**

John Feller appeals the denial of his application to modify sex offender registration requirements. He contends the district court abused its discretion in finding the circumstances do not warrant ending the requirement that he register for life. We affirm.

## I.      Factual and Procedural Background

In April 2011 the State initially charged Feller by trial information with lascivious acts with a child and third-degree sexual abuse for conduct occurring between 2007 and 2011. His victim was his then-fifteen-year-old stepdaughter, J.B. The abuse came to light in April 2011 when J.B. disclosed it to her mother, Kayla. The abuse consisted of Feller kissing J.B. and placing his mouth or fingers on her breasts and genitals. Feller and Kayla also have a biological daughter together, L.F., who was around five years old at the time of his convictions. Feller and Kayla have since divorced.

According to a memorandum of plea negotiation, the State agreed to dismiss the sexual abuse charge and substitute a second count of lascivious acts with a child to the April 2011 trial information. While awaiting trial, Feller received a letter from his attorney explaining that an inexperienced assistant in the county attorney's office failed to amend the open case file. Instead, the State filed a second trial information in July alleging one count of lascivious acts with a child for the same timeframe as the first information. Going forward with two case numbers, Feller pleaded guilty to two counts of lascivious acts with a child in October 2011. *See* Iowa Code § 709.8 (2011). He received a sentence of five years imprisonment on each count to be run concurrently and a ten-year special

sentence committing him to the custody of the Iowa Department of Corrections (DOC). He was also ordered to register as a sex offender "as required under Iowa Code chapter 692A."

After entering prison in 2012, Feller submitted an "application for determination" to the Iowa Department of Public Safety (DPS) to establish his sex offender registration (SOR) requirements. The DPS informed him he was required to register "for a period of ten years."

Feller discharged his term of incarceration in 2014 and his special sentence in 2018. After his release from prison, he applied for SOR determination again. In 2016, the DPS informed him he was required to register for life:

> Your convictions October 24, 2011 for Lascivious Acts with a Child, in violation of Iowa Code Section 709.8(3), case FECR95382, and Lascivious Acts with a Child, in violation of Iowa Code Section 709.8(3), case FECR96569.
> According to Iowa Code Section 692A.103(1)(c)(26)[1 (2016)] and 692A.102(5), Lascivious Acts with a Child, Iowa Code Section 709.8(3), if committed against a person under thirteen years of age, is a Tier III sexual offense.
> According to Iowa Code Section 692A.106(5), a conviction for a second/subsequent sex offense requires a sex offender to register for life.

Feller did not challenge that determination.

Five years later, in December 2021, Feller applied to modify his SOR requirements under Iowa Code section 692A.128. At the hearing, he chose not to testify but submitted an affidavit. He stated he discharged his sentence in 2014 and only then learned that he would have to register for life. He completed sex offender treatment while incarcerated and another sex offender treatment program

---

[1] We note this code section in 2016 was for the offense of "[i]ndecent contact with a child in violation of section 709.12," not lascivious acts with a child.

while on parole. He has had no criminal charges in the eight years since his release including no registration violations. This means, as a Tier III offender, he has registered properly every quarter. And for the last eight years he maintained full-time employment and had his own apartment and vehicle. He also submitted a letter from the DCS affirming that he had "no compliance issues" with his SOR requirements, had completed all sex offender treatment programs that were required, and his risk assessment classified him as "a low risk to reoffend." The most recent assessment was in 2021 and affirmed that classification.

At the hearing on the petition, J.B. and Kayla testified opposing the modification. Their primary concern was Feller's effort to maintain contact with L.F. who, at the time of the hearing, was fifteen years old. They testified that since Feller went to prison, he has sent letters or cards to L.F. nearly every month. J.B. testified that the letters were of the same demanding and manipulative tone that Feller used to groom her for abuse as a child. Kayla testified that at first L.F. wanted to see the letters and cards and wrote a few back to her father. But for more recent years, L.F. had not even opened the missives from Feller. Kayla testified that L.F. was "very scared that what happened to her sister will happen to her" and did not want any relationship with her father.

The district court denied the request for modification, giving J.B.'s testimony almost controlling weight:

> Having observed and listened to [J.B.], the court finds her to be an extremely credible witness and accepts her unrebutted testimony as fact. For these reasons, the court also gives weight to her belief, which is based on her own experience and Feller's similar pattern with respect to his younger daughter, that Feller's obligation to register as a sex offender should continue.

The court considered other factors as well including Feller's demeanor at the hearing, his lack of remorse, and the pattern of behavior he exhibited. It determined, "Feller presents a significant enough risk to reoffend that he should continue to register as a sex offender." Feller appeals the denial of his application.

## II.      Scope and Standards of Review

The district court has the authority to modify sex offender registration requirements under Iowa Code § 692A.128 on application by the offender. *See Becher v. State*, 957 N.W.2d 710, 714 (Iowa 2021). At the first of this two-step process, the court determines whether the offender has met the threshold statutory requirements for modification. Iowa Code § 692A.128(2) (directing that a modification "shall not be granted unless all" the statutory criteria are met); *Becher*, 957 N.W.2d at 714. We review the district court's determinations pertaining to those criteria for correction of errors at law. *Id.*

If met, at the second step the district court exercises discretion on whether to ultimately grant the modification. Iowa Code § 692A.128(5) ("The court may modify the registration requirements under this chapter."); *Becher*, 957 N.W.2d at 714 ("The word 'may' ordinarily vests the trial court with discretion."). Consequently, review of that decision is for an abuse of discretion by the district court. *Id.* The court has abused its discretion when its ruling's rationale is unreasonable or untenable. *Id.* "A ruling is clearly unreasonable or untenable when it is 'not supported by substantial evidence or when it is based on an erroneous application of the law.'" *Id.* (citation omitted).

Under more recent guidance from the supreme court, "a district court commits an abuse of discretion when it fails to consider a relevant factor, or

considers an improper or irrelevant factor, on the question of whether the ongoing risks of danger from the sex offender justifies continuation of the registration requirements." *Fortune v. State*, 957 N.W.2d 696, 707 (Iowa 2021). What factors are relevant versus irrelevant or improper is a developing question in Iowa caselaw. *See, eg.*, *id.*; *Becher*, 957 N.W.2d at 716–17. "Where only proper factors have been considered, we find an abuse of discretion only where there is a clear error of judgment." *Fortune*, 957 N.W.2d at 707.

In exercising discretion, the court must recall that the purpose of Iowa Code chapter 692A "is not to punish but to aid the efforts of law enforcement officers in protecting society." *Newton v. Iowa Dep't of Pub. Safety*, No. 10-1696, 2011 WL 3480993, at *4 (Iowa Ct. App. Aug. 10, 2011) (citation omitted). So the court "must take care to ensure that public safety, and not punishment, provides the lens through which facts are evaluated." *Fortune*, 957 N.W.2d at 707.

### III. Analysis

The parties agree that Feller met the threshold statutory criteria for consideration of his modification request.[2] The only question is whether the district

---

[2] Those criteria, set out in Iowa Code section 692A.128(2), are:
a. The date of the commencement of the requirement to register occurred at least two years prior to the filing of the application for a tier I offender and five years prior to the filing of the application for a tier II or III offender.
b. The sex offender has successfully completed all sex offender treatment programs that have been required.
c. A risk assessment has been completed and the sex offender was classified as a low risk to reoffend. The risk assessment used to assess an offender as a low risk to reoffend shall be a validated risk assessment approved by the department of corrections.
d. The sex offender is not incarcerated when the application is filed.

court abused its discretion in determining modification was not warranted. In making that decision, on top of the statutory requirements, the court "may consider additional factors that are relevant to" two considerations: first, the risk of reoffense and, second, whether "public safety would require" that registration continue. *Fortune*, 957 N.W.2d at 707. The discretion afforded to the district court allows it "to consider a wide range of potentially relevant factors," but the factors considered must be "rationally related to the underlying goals" of the registry. *Id.* at 706–07. We ask whether the factors the district court considered were relevant and proper and whether any relevant factors were omitted.[3] *Id.* at 707. Then we consider whether there is "a clear error of judgment." *Id.*

Feller contends the district court considered improper factors and there was not substantial evidence to support its decision. He argues: (1) the primary reason for denial was the district court's "imagined" threat to L.F., which is not supported by substantial evidence; (2) there is no substantial evidence that Feller poses a threat to the community at large as L.F. already knows of his sex offender status and thus his presence on the registry does not make her any safer; (3) the district court failed to consider that the procedural error in the filing of the charges against Feller led to him being required to register for life, rather than ten years, which is a relevant factor to why he should be granted modification; and (4) the district court

---

e. The director of the judicial district department of correctional services supervising the sex offender, or the director's designee, stipulates to the modification, and a certified copy of the stipulation is attached to the application.

The final element is not required when the offender is off supervision.

[3] We do not require the district court to state every factor it considered. We only require the stated reasons to be sufficient to review the discretionary action. *Fortune*, 957 N.W.2d at 707.

relied on improper factors when it cited Feller's demeanor during the hearing, choice to testify by affidavit rather than personally, and the letter-writing.

## A.    Letter-writing

Feller contests the primary basis of the denial: the alleged threat posed by his letters to L.F.  Feller argues, "When evidence about that threat is examined, it should be clear that there is not substantial evidence to support that need to continue Feller on the registry."  The district court anchored its decision in the perceived threat to L.F. that J.B. identified.  J.B. testified that Feller started sending letters to L.F. in 2012 and continued monthly for roughly a decade.  The last letter on the "giant stack" was dated April 2022, approximately six months before the hearing.  She testified that she found the letters to contain a "theme" from Feller that resembles the pushy dynamic she once experienced with him.

> [I]t's a push.  Right?  It's I want to see you.  Why haven't I heard from you?  It's like a jab after jab.  It's why haven't you contacted me?  Why this?  Why that?  And [L.F.] has opportunities to write back, and she doesn't, and that's her decision.  But I think what these letters prove is the language before parole and after parole have the same enticing language of why this?  Why that?  Why haven't you done this?  Why haven't you given back to me, you know?

J.B. further identified the persistence of Feller's pushes as typical of his conduct toward her.  She brought along a sampling of Feller's notes and letters that she thought "had the most manipulative tactics in them."

On our review, Feller's letters and cards, without context, overwhelmingly consist of sentiments of love and good wishes for his daughter and updates on his life and activities.  But they also contain appeals to hear from her and the desire to maintain a relationship with her.  As examples of potentially troubling language, Feller wrote: "[L.F.] maybe someday you will forgive me and want me in your life";

"father's day is on the 21st if you care hope you do"; "September 16th was my birthday hope you know this been nice to get a card and let me know you care or are thinking of me"; "please send me a card"; "[b]e nice to hear from you"; "the last time I heard from you was September of 2016 it's been almost 4 years"; "be nice to hear from you with all that is going on in the world with COVID-19"; and "have not heard from you in a long time 4 or 5 years."

Kayla also testified at the hearing that L.F. is aware Feller writes her letters and cards but does not open or read them anymore. According to Kayla, L.F. "does not want communication with her father." Kayla also testified L.F. remains "very scared that what happened to her sister will happen to her if she had any contact with" Feller.

Feller argues it is improper to criticize him for the letters to his daughter because Kayla gave permission through his probation officer to send them.[4] And no one told Feller to stop sending the letters. He also questions J.B.'s characterization of the letters and disputes that they indicate a theme or pattern of behavior consistent with grooming. Finally, he argues continuing on the registry provides no benefit to public safety because L.F. knows about his convictions and history.

---

[4] An email record going back to 2012 shows Kayla granted that permission and even asked if L.F. could send a Father's Day card back. The permission to contact L.F. was renewed several times through 2017. The State argues Feller should have stopped when he received no response. But we think it's fair for Feller to have continued his efforts to maintain contact with his biological daughter in the absence of other instruction even if she was a passive recipient. No evidence was presented that Feller's parental rights to L.F. were terminated. Still, it is the character and tone of his appeals for further contact that are the most concerning.

While we understand a parent's wish to have a connection with their child, the fact of the letter-writing concerned the district court less than the content of the letters. The court stated: "Feller continues to engage in an identifiable pattern of behavior that he exhibited with his older daughter in the prelude to and course of his sexual abuse of her." In naming the troubling pattern of behavior, the court cited *Larvick v. State*, where the district court determined that after his release the offender continued to "utiliz[e] his relationship with the mother of his biological daughters to have access to those daughters," having already sexually abused the elder. No. 20-1273, 2022 WL 610361, at *4 (Iowa Ct. App. Mar. 2, 2022). Feller argues his case is not like *Larvick* because the mother there offered her children no protection, while Kayla would protect L.F. The district court agreed with that observation but nevertheless found the similarity that repeating the patterns of behavior that led to his conviction "suggests [Feller] is a potential danger" to the new focus of that behavior, L.F. *See id.* Further, the consideration of patterns of behavior in past offenses to better understand future conduct is permissible and not an abuse of discretion. *See State v. Buck*, No. 21-0129, 2022 WL 951067, at *2 (Iowa Ct. App. Mar. 30, 2022); *see also Fortune*, 957 N.W.2d at 709.

J.B. explained that she selected messages that best showed the risk Feller poses to L.F. To an outside observer, they show only that a parent wants to reconnect with his child. But J.B. provided context for the messages, that constitutes evidence that supports the court's finding—pressure and grooming. In addition, the district court found her to be highly credible and "accept[ed] her unrebutted testimony as fact." The court also relied on Kayla's testimony on L.F.'s behalf that she does not want contact with her father.

Feller did not testify to rebut those concerns, other than offering the email record from his supervision officer authorizing the letters. He did not express an intent to stop writing the letters or acknowledge L.F.'s wishes. And L.F. is around the same age as J.B. was when his abuse of her stopped. The court considered Feller's clean record over the eight years since his release and his success at rebuilding his life, as well as his risk assessment indicating low risk, and his successful completion of sex offender treatment. But it still determined that the content of the letters overcame those factors by presenting a risk of reoffense and that public safety concerns warranted keeping Feller on the registry. We defer to the district court's credibility determinations and find substantial evidence supports the court's conclusions that Feller continues to present a risk of reoffense based on the threat to L.F.

## B.    Feller's threat to public safety

Feller contends that the court also abused its discretion because there is no substantial evidence that he poses any danger to the community. Feller further contends that since L.F. already knows of his status as a sex offender, that there is no threat to her by removing him from the registry as his presence on it does not make her any safer, and that there is no substantial evidence to show he is a threat to the community at large. As we stated in *Larvick*:

> The fact that the district court had safety concerns for a specific person in addition to the public in general does not constitute an abuse of discretion. The younger daughter is a member of the public. As the goal of sex-offender-registration requirements is to ensure public safety, that goal is advanced by protecting all members of the public, which includes Larvick's younger daughter.

2022 WL 610361, at *4.  The district court found Feller posed a risk to L.F. who is a member of the public.  Thus, we find no abuse of discretion in this conclusion.

## C.  Failure to consider procedural error

Feller contends the district court abused its discretion when it failed to consider the alleged procedural error that resulted in his lifetime registry requirement.  The State's brief does not address the issue.  Feller claims his cases should have been consolidated and not brought separately as they were, that the State's error violated his plea agreement, and that the DCS changed its determination of his registry requirement in 2016 without warning.  But he did not challenge his convictions in an appeal or in postconviction-relief proceedings.  Nor did he challenge his lifetime registry determination when he received it in 2016. *See, e.g.*, *Newton*, 2011 WL 3480993, at *1.  He has not applied for a correction of illegal sentence and even on appeal does not raise an illegal-sentence claim.[5]

---

[5] Feller acknowledges that the Iowa Code treats his convictions as separate offenses for registry purposes.  *See* Iowa Code § 692A.102(6) ("Convictions of more than one sex offense which require registration under this chapter but which are prosecuted within a single indictment shall be considered as a single offense for purposes of registration."); *but see c.f.*, *Newton*, 2011 WL 3480993, at *4 (rejecting offender's request to hold "each succeeding conviction must be subsequent in time to the previous conviction" for registry purposes and finding his offenses, though committed on the same date, were two convictions "based on two different trial informations, which resulted from two *separate incidents* on *different dates*, against *two separate victims*" (emphasis added)).  The single-indictment rule would tend to incentivize the error the State made here when it failed to amend the trial information.  Both informations in this case contained the same facts, timeframe, and minutes of testimony.  And we do not have a record of the factual basis for the plea.  But Feller did not petition for judicial review of the 2016 determination or apply for correction of an illegal sentence.  We are authorized to correct an illegal sentence at any time.  *See* Iowa R. Crim. P. 2.24(5).  But the record is too sparse to assess the issue, even if we could classify DCS's 2016 determination as an illegal sentence issue rather than—as Feller implies—a breach of plea agreement or ineffective assistance or a nonpunitive sentencing factor or requiring Feller to seek judicial review.

Recognizing that, he insists this mistake should be a factor in assessing his modification request. The district court must not omit relevant factors and has the authority to consider any factors that are relevant to the risk of reoffense or the needs of public safety. *See Fortune*, 957 N.W.2d at 707. But the court did not address this factor in its order and issued a summary denial of Feller's post-order motion to amend specifically requesting that the court consider it. The State in resistance asserted the issue is moot. There is no determination that Feller's lifetime registration requirement is wrong. So that factor cannot bear on his risk of reoffense or public safety concerns. The court did not fail to consider a relevant factor, so we find no abuse of discretion.

### D. Improper factors

Feller lastly contends that the district court abused its discretion by relying on his demeanor to find a lack of remorse and his choice to submit an affidavit rather than testify. The court acknowledged that "[t]he law does not require him to testify," but insisted this "left the court no impression of Feller other than its observations of his demeanor in the courtroom," which the court described as "discomfort and avoidance." The court criticized Feller for not making eye contact with the court or the witnesses and for not expressing any remorse for the victim. The court professed that it was "not entirely discounting the affidavit" and that it had "no reason not to believe" that Feller has been successfully living and working in the community after his release.

Courtroom demeanor and lack of remorse are valid factors for the court to consider if those have a factual basis in the record. *See Fortune*, 957 N.W.2d at 709.; *State v. Seidell*, No. 21-0493, 2022 WL 951002, at *2 (Iowa Ct. App. Mar. 30,

2022). And it is fair for the court to point out that Feller offered no explanations or rebuttal testimony to the State's witnesses. But substantial evidence does not support the court's finding that Feller lacked remorse. The court cited *Seidell*, where the offender listened to the child victim's testimony and still informed the court, "I'm not this monster that my victim claims me to be. I didn't rape her . . . ." 2022 WL 951002, at *2. The district court in *Seidell* noted his "facial expressions and demeanor" demonstrated a "lack of empathy for the victim who he knew was listening to the testimony" and "indicate[d] to the court that he does not fully comprehend the gravity" of his offense. *Id.*

No one placed Feller's remorse in issue—the State did not reference it in supportive briefing or at the hearing and no witness was asked about it. *See Fortune*, 957 N.W.2d at 709 (finding the record did not support lack of remorse when it "seems to have been a nonissue to the parties"). Nothing in the record shows Feller denied culpability, used inappropriate facial expressions, lacked empathy, or failed to comprehend the gravity of his crime, as in *Seidell*. Feller was under no obligation to testify at the hearing to express affirmative remorse; but in his affidavit he stated, "I fully accept responsibility for my actions." There is also evidence through Feller's letters to his daughter acknowledging his wrongdoing and seeking forgiveness. And he successfully completed sex offender treatment, which typically requires acceptance of responsibility. *See id.* With that backdrop, failure to make eye contact with his victim and perceived "discomfort and avoidance" during an inherently uncomfortable court proceeding does not rise to substantial evidence of a lack of remorse.

**IV.     Conclusion**

This is a difficult case because Feller has completed all the threshold requirements for modification successfully, has a low risk of reoffense according to validated risk assessments, and has steadily built a successful life in the community for the last eight years.  Feller also has an understandable desire to reconnect with his daughter.  On the other hand, we have J.B.'s characterization of his statements, the repetition of a troubling pattern of behavior in his appeals to L.F., the ongoing fear L.F. experiences because of his continued attempts to establish contact, and the absence of any intent to stop or acknowledgement that she wants it to stop.  This record shows substantial evidence supporting the district court's decision based on Feller's risk of reoffense and the interests of public safety that compels his continued placement on the registry at this time.  Accordingly, we find no abuse of discretion and affirm.

**AFFIRMED.**